UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE S. GORE, | ) | CASE NO. 5:20-cv-341 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the report and recommendation of Magistrate Judge Jonathan Greenberg ("R&R") (Doc. No. 24) regarding plaintiff George S. Gore's ("plaintiff" or "Gore") complaint for judicial review of the defendant Commissioner of Security's ("defendant" or "Commissioner") denial of his applications for Period of Disability ("POD") and Disability Insurance Benefits ("DIB"). The magistrate judge recommended that the Commissioner's decision be affirmed. Plaintiff filed an objection to the R&R (Doc. No. 25) and the Commissioner filed a response. (Doc. No. 26). For the reasons set forth below, the Court overrules plaintiff's objection, accepts the R&R, affirms the Commissioner's decision, and dismisses this case.

**I.  BACKGROUND**

Gore does not object to the factual and procedural history set forth in the R&R and, therefore, the Court adopts that portion of the R&R in full. Briefly, plaintiff applied for POD and DIB in April 2016, alleging a disability onset date of June 11, 2015 and claiming that he was disabled due to glaucoma, blindness in his left eye, and depression.[1] (Doc. No. 24 at 2.). Gore's

---

[1] No mental impairments are at issue in this case. (Doc. No. 24 at 3.) All page number references are to the consecutive page numbers applied to each individual document by the Court's electronic filing system

applications were denied initially and upon reconsideration, and plaintiff requested a hearing before an administrative law judge ("ALJ"). On February 1, 2019, an ALJ conducted a hearing at which Gore, represented by counsel, and a vocational expert testified. (*Id.*) On February 13, 2019, the ALJ issued a written decision finding that Gore was not disabled, and that decision became final on December 17, 2019 when the Appeals Council declined further review. (*Id.*)

Gore filed the instant action challenging the Commissioner's final decision and asserting two assignments of error: (1) the ALJ's decision should be reversed because the ALJ failed to properly evaluate the opinions provided by plaintiff's treating physician, and (2) Gore is disabled under SSR 85-15 because he is closely approaching retirement age and his severe, medically determinable impairments prevent him from performing past relevant work. (*Id.*) This case was referred to the magistrate judge pursuant to Local Rule 72.2, who performed a lengthy analysis of Gore's assignments of error and issued a report recommending that the Commissioner's decision be affirmed. (*See id*. at 1.)

Gore filed an objection to the R&R, arguing that the ALJ improperly failed to give controlling weight to the opinions of his treating physician. (*See* Doc. No. 25.) The Commissioner's response states that "Plaintiff appears to be raising several arguments that were extensively addressed in both the Commissioner's main brief and the Magistrate Judge's R&R" and maintains that the ALJ properly considered the opinions of Gore's treating physician in the context of all the evidence in the record. (*See* Doc. No. 26 at 2.)

II. **DISCUSSION**

    A. **Standard of Review**

This Court's review of the R&R is governed by 28 U.S.C. § 636(b), which requires a *de novo* decision as to those portions of the R&R to which objection is made. *See Powell v. United*

*States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district judge in light of the *specific objections* filed by any party.") (emphasis added) (citations omitted); *see also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to[]"); Local Rule 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections[]"). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).

Judicial review of an administrative decision under the Social Security Act is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42 U.S.C. § 405(g); *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). If there is substantial evidence to support the defendant's decision, it must be affirmed even if the reviewing court might have resolved any issues of fact differently and even if the record could also support a decision in plaintiff's favor. *See Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to

3

reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

### B. Analysis

#### 1. Gore's second assignment of error

As an initial matter, Gore's objection to the R&R is silent regarding his second assignment of error concerning SSR 85-15. In the R&R, the magistrate judge found the ALJ's conclusion that Gore was not disabled under that standard to be supported by substantial evidence and recommended that the Court affirm the Commissioner's denial of disability on that basis. (*See* Doc. No. 24 at 26–28.) Gore generally "requests that this Court carefully review the arguments set forth in Plaintiff's Statement of Specific Errors in addition to the arguments presented herein," but does not even mention, let alone actually object to, any portion of the R&R concerning the second assignment of error. (Doc. No. 25 at 2) (emphasis in original). Failure to object to any portion of a report and recommendation constitutes a waiver of the right to do so. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985) (approving the rule set forth in *United States v. Walters,* 638 F.2d 297 (6th Cir. 1981)); *see also Derring v. McKee*, No. 1:04-cv-796, 2006 WL 416255, at *1 (W.D. Mich. Feb. 22, 2006) ("The consequence of a failure to object to a specific portion of the report and recommendation is waiver of review of that issue.") (citing *United States v. Sullivan,* 431 F.3d 976, 983 (6th Cir. 2005)). And to the extent that Gore's objection could be construed as a general objection to the R&R as to his second assignment of error, it is well-settled that a general objection does not invoke the Court's obligation of *de novo* review. *See Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) (a general objection has the same effect as a failure to object as it does not focus the district court's attention on a specific issue for review); *see also VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004) ("A general

4

objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge.").

Accordingly, the Court accepts and adopts the magistrate judge's recommendation regarding plaintiff's second assignment of error.

### 2. Gore's first assignment of error

With respect to the first assignment of error, Gore's objection to the R&R regarding the ALJ's treatment of his treating source's opinions is generalized. The gist of Gore's objection is that the ALJ lacks substantial evidence supporting his reasons for not giving Dr. Antalis' opinions controlling weight, the ALJ's reliance on Gore's daily activities was a misrepresentation of the record, and the ALJ improperly "discredited the treating source opinions of Dr. Antalis—opinions that would have resulted in Mr. Gore being found disabled—without providing the necessary good reasons supported by substantial evidence properly explaining the reasoning behind the ALJ's decision."[2] (Doc. No. 25 at 3, 5.) As noted by the Commissioner's response, Gore appears to be reasserting arguments he made before, and "[a]n 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in [28 U.S.C. § 636(b)]." *Aldrich*, 327 F. Supp. 2d at 747. "A court is only required to conduct a *de novo* review of the portions of an R & R to which the parties have made an objection, and the parties have a 'duty to pinpoint those portions of the magistrate's report that the district court must specially consider.'" *Cline v. City of*

---

[2] Both the Commissioner and the ALJ acknowledge Dr. Antalis as Gore's treating physician for the conditions at issue in this case. *See* 20 C.F.R. § 404.1502. Dr. Antalis treated Gore for the loss of most of his vision in his left eye beginning in 2008 and chronic glaucoma in his right eye and performed cataract surgery on Gore's right eye on July 8, 2014.

*Mansfield*, 745 F. Supp. 2d 773, 787 (N.D. Ohio 2010), *amended in part* (Jan. 27, 2011), *aff'd sub nom. Cline v. Myers*, 495 F. App'x 578 (6th Cir. 2012).

The only portion of the R&R that Gore specifically identifies as objectionable is at page 22:

> The crux of Mr. Gore's issue is that the ALJ improperly discredited Dr. Antalis' treating source opinions because the ALJ failed to provide good reasons supported by substantial evidence explaining why Dr. Antalis' treating source opinions were being accorded less than controlling weight. The Magistrate Judge disagrees with Mr. Gore's argument because the Magistrate Judge does not agree that the ALJ must "demonstrate" the extent of Mr. Gore's impairment. *Page ID No.* 890. Here, the Magistrate Judge may have misinterpreted Mr. Gore's reasoning.
>
> It is agreed that the ALJ's duty is to provide good reasons supported by substantial evidence explaining why a treating source's opinions were being given less than controlling weight. 20 C.F.R. § 404.1527. It is also agreed that there is no real burden on the ALJ to demonstrate the extent of Mr. Gore's impairment. Mr. Gore's argument focuses on the lack of substantial evidence supporting the ALJ's "good reason." Mr. Gore is not claiming that the ALJ was required to demonstrate the extent of Mr. Gore's impairment, but rather the ALJ's reliance on Mr. Gore's activities of daily living was a misrepresentation of the record. The ALJ claimed that Mr. Gore "engaged in public life and was able to complete household tasks such as cooking, caring for his pets and driving despite his impairments. The claimant testified that he was able to traverse the stairs." . . . Mr. Gore's argument centers on the fact that the ALJ did not properly consider the reality of Mr. Gore's activities of daily living.

(Doc. No. 25 at 2–3.)

Plaintiff then goes on to summarize his testimony and contents of his Function Report that states his ability to cook consists of making coffee and toast and simple meals slowly in a microwave, he avoids household cleaning chores because he is unable to determine whether he has successfully cleaned an area due to poor vision, he cares for his pets by putting food down, he drives short distances without sun glare, he trips in the house and was almost struck by children on their bikes because he could not see them, he has difficulty navigating stairs and uneven ground

6

without tripping or falling, and he uses a flashlight in every room to help him see. (*Id.* at 3–4.)

Following this summary, Gore argues that:

> [t]he ALJ's overly simplistic and terse consideration of Mr. Gore's activities of daily living are not an accurate representation of Mr. Gore's reality. This is extremely important because when evaluating Dr. Antalis' February 2016 opinions, the opinions that would prevent Mr. Gore from engaging in any type of work, the ALJ only relied upon his own narrow view of Mr. Gore's activities of daily living to discredit Dr. Antalis' treating source opinions. It was the ALJ's limited view of the record and terse dismissal of work preclusive opinions from the only treating source of record that lies at the center of Mr. Gore's argument. . . . [T]he ALJ discredited the treating source opinions of Dr. Antalis—opinions that would have resulted in Mr. Gore being found disabled—without providing the necessary good reasons supported by substantial evidence properly explaining the reasoning behind the ALJ's decision.

(Doc. No. 25 at 4–5.)

The Court need not address whether the magistrate judge misinterpreted Gore's complaint regarding the ALJ's treatment of Dr. Antalis' opinions because, after conducting a *de novo* review, the Court finds that the ALJ provided good reasons supported by substantial evidence for not giving Dr. Antalis' opinions controlling weight.

Dr. Antalis wrote three medical source opinions (May 5, 2015,[3] February 2, 2016, and May 16, 2016[4]) regarding Gore's vision impairments. (*See* Doc. No. 24 at 4–7.) The only treating source opinion which Gore specifically identifies as at issue in his objection is Dr. Antalis' February 2016 opinion. Gore contends that the ALJ erred by not giving this opinion controlling weight and, if the ALJ had done so, plaintiff would have been found to be disabled. (*See* Doc. No. 25 at 4–5.)

---

[3] On May 5, 2015, Dr. Antalis wrote a medical source opinion regarding Gore's vision impairments. (Doc. No. 16 at 348–49.) On that date, Dr. Antalis stated that Gore, who was 61 years old at the time, has advanced glaucoma in both eyes with only finger count vision in his left eye and significant visual field loss in his right eye. Dr. Antalis opined that Gore, who worked as a truck driver, should not be driving for work or operating heavy machinery because of his visual status, but "is able to do most other activities of daily living without limitations[.]" (*Id.*)

> The ALJ addressed Dr. Antalis' May 2015 opinion as follows:
>
> In a medical opinion dated May 2015, John Antalis, M.D., the claimant's treating physician, opined that the claimant should not operate a motor vehicle, heavy machinery or hazardous machinery. He should not engage in fine detail work. He was able to do most other activities of daily living without limitations such as walking, sitting, standing, hearing and lifting. I give this opinion some weight and do not give it controlling weight. The opinion predated the amended onset date [of June 11, 2015], which detracted from its analytical value. However, the limitations discussed are consistent with the claimant's reduced visual field in his right eye and blindness in his left eye.

(Doc. No. 16 at 25.)

Although Gore's objection does not specifically take issue with the R&R regarding the ALJ's decision to assign some weight, but not controlling weight, to Dr. Antalis' May 2015 opinion, the Court finds that the ALJ did not err in discounting the opinion because it predated Gore's disability date, but did credit the opinion because the limitations described therein were consistent with Gore's visual impairments, and the limitations described therein are contained in the ALJ's determination of Gore's residual functional capacity. (*See* Doc. No. 16 at 23–24.) *See also Lorrison v. Berryhill*, No. 18-cv-10289, 2019 WL 1324247, at *6 (E.D. Mich. Mar. 25, 2019) (ALJ's treatment of evidence of disability falling outsider the relevant period as less persuasive was appropriate because evidence that "'predate[s] the alleged onset of disability [is] of limited relevance.'") (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)).

[4] On May 16, 2016, Dr. Antalis updated his May 2015 letter, reporting that Gore has almost no vision in his left eye due to advanced glaucoma and significant field loss in his right eye and that his "disability status from an ocular standpoint" was unchanged from Dr. Antalis' May 2015 opinion and Gore can no longer work as a truck driver or with heavy machinery. (*See* Doc. No. 16 at 341.) The ALJ did not give controlling weight to Dr. Antalis' May 2016 opinion because he opined on "matters reserved to the commissioner," but did give the opinion some weight because it was partially consistent with the record. (Doc. No. 16 at 26.) Although Gore's objection does not specifically take issue with the R&R regarding the ALJ's decision to assign some weight, but not controlling weight, to Dr. Antalis' May 2016 opinion, the Court finds that the ALJ did not err in discounting the opinion regarding Gore's disability status and the limitations described therein are contained in the ALJ's determination of Gore's residual functional capacity. (*See* Doc. No. 16 at 23–24.) *See also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("'The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.'") (quoting *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985)).

In his February 2, 2016, vision impairment medical source statement (Doc. No. 16 ("Transcript") at 395–97), Dr. Antalis states that Gore has essentially no peripheral vision in his left eye and moderate nasal and temporal vision loss in his right eye, that his depth perception was poor, and that Gore had fallen on steps, feels unsafe driving long distances and at night, and is sometimes startled by people because he does not see them. Dr. Antalis opined that Gore should not perform work activities requiring depth perception and field of vision, and that he could not avoid ordinary hazards in a work place such as objects on the floor, doors ajar, and approaching people or vehicles, and had difficulty walking on stairs. That said, Dr. Antalis also opined that Gore could work with small objects such as those involved in doing sedentary work, and with large objects, and could "frequently" perform work involving near and far acuity. Dr. Antalis concluded his treating source statement as follows: Gore should not drive for work, and not operate heavy machinery or do any dangerous tasks because of his vision loss. (*Id.*)

> The Sixth Circuit has set forth the weight to be given the opinion of a treating physician:
>
> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.,* as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).
>
> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

In summary, if the ALJ determines that a treating source opinion is not entitled to controlling weight, the ALJ must provide good reasons for discounting the opinion that are sufficiently specific to make clear to the claimant and subsequent reviewer the reason for that weight. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *Gayheart*, 710 F.3d at 376. If the ALJ does not accord the opinion of the treating source controlling weight, the ALJ must consider certain factors in determining what weight to give the opinion. "These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (d)(3)-(6)).

"[A] good reason is if a treating source's opinion is inconsistent with the rest of the evidence." *Gipson v. Comm'r of Soc. Sec.*, No. 5:16-cv-1108, 2017 WL 3732009, at *8 (N.D. Ohio Aug. 30, 2017) (citing *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993)). Good reasons must be supported by substantial evidence in the record. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (quoting SSR 96-2p, 1996 WL 374188, at *5).

The ALJ decided to give Dr. Antalis' February 2016 opinion some weight, but not controlling weight. The ALJ specially stated the reasons for his decision and cited to some portions of the record that supported that decision:

> [Dr. Antalis' February 2016 opinion] overstated the claimant's impairments. The record did not support the assertion that the claimant was unable to avoid normal hazards using the vision in his right eye. He engaged in public life and was able to complete household tasks such as cooking, caring for his pets and driving despite

10

>his impairments. The claimant testified that he was able to traverse stairs. (Testimony; 7E). However, the treatment record demonstrated that the claimant's depth perception and field of vision were impaired. Because this opinion was partially consistent with the opinion, I give it some weight. (2F; 12F).

(Doc. No. 16 at 25.)

This explanation is sufficiently specific to make clear the reasons the ALJ did not give Dr. Antalis' February 2016 opinions controlling weight. The regulations instruct an ALJ to consider the factors set forth in 20 C.F.R. § 404.1527(d)(2) in determining the weight to give a treating source opinion, but do not require an exhaustive factor-by-factor analysis, only that the decision include good reasons for the weight assigned. *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011).

The record before the ALJ demonstrated that Gore had 20/20 corrected vision in his right eye and his glaucoma was well controlled, though he had some peripheral vision loss. (*See* Doc. No. 16 at 340–50.) At the ALJ hearing, Gore testified that he goes up and down the basement stairs to move seasonal yard care equipment and about once a month to help his wife with kitty litter. (*Id.* at 42–43.) The record also reflects that Gore has a restricted driver's license and, while he does not drive at night and avoids driving in sun glare during the day, he drives 15–16 miles to the local Walmart twice a week and to medical appointments. (*See id*. at 43, 212, 351.) With respect to daily activities, Gore testified that on a typical day he has breakfast, feeds the cats, makes coffee, and watches the news on the computer all before his wife rises for the day. Gore testified that he has "no problem" with those chores but proceeds slowly and takes his time so he does not, for example, spill the coffee. He is able to read printed text and text on a computer screen, mow grass in the summer (though sometimes he misses spots), shovel snow in the winter, and wash his car. (*Id.* at 52–54.) Gore testified that he performs his daily activities more slowly and more carefully because

of his vision. For example, Gore counts stairs to navigate them safely and, when he has difficulty on stairs, he feels it "was my bad [for] not paying attention." (*Id.* at 50–51.) Gore further testified that he has four cats at home that he might trip over, but they are "good practice" for watching what is going on around him to avoid hazards. (*Id.* at 53.) He attends church on Sunday with his wife and goes grocery shopping but prefers shopping with his wife. (*Id.* at 234.)

Gore claims that the ALJ erred by not giving Dr. Antalis' February 2016 opinions controlling weight and the ALJ's reasons for doing so were not good reasons because they conflicted with Dr. Antalis' opinion and relied on the ALJ's "own narrow view" of Gore's daily life activities. The ALJ was required to give good reasons for not giving Dr. Antalis' opinions controlling weight and he did so, finding that a portion of Dr. Antalis' February 2016 opinion overstated Gore's limitations and were inconsistent with other evidence in the record—such inconsistencies constitute "good reasons." *Gipson*, 2017 WL 3732009, at *8; *see also Marlowe v. Comm'r of Soc. Sec.*, No. 1:18-cv-2455, 2019 WL 6970786, at *10 (N.D. Ohio Dec. 3, 2019) (ALJ's decision to give partial weight to treating physician's opinion that the claimant had no ability to perform tasks involving understanding, memory, concentration, persistence and social interaction on a regular, reliable basis because the opinion "greatly overstate the claimant's limitations and are not consistent with the available medical evidence summarized above" was legally sufficient), *report and recommendation adopted sub nom. Marlowe v. Comm'r of Soc. Sec. Admin.*, No. 1:18-cv-02455-JG, 2019 WL 6915072 (N.D. Ohio Dec. 19, 2019). And a claimant's testimony which is inconsistent with a treating source's opinion constitutes substantial evidence which the ALJ may consider in determining whether to give the opinion controlling weight. *See Warner*, 375 F.3d at 391 (the Commissioner could disregard conclusion of claimant's treating physician that claimant could stand only or walk for only two hours, inasmuch as such conclusion

12

was inconsistent with substantial evidence indicating otherwise, including claimant's testimony that his carpal tunnel syndrome did not typically affect his ability to stand or walk).

Gore's complains that the ALJ did not give Dr. Antalis' February 2016 opinion controlling weight based upon the ALJ's own narrow view of Gore's daily activities is essentially a disagreement with the ALJ's assessment of the evidence in the record. In his brief on the merits, Gore acknowledges that the ALJ determined that Dr. Antalis' February 2016 opinion conflicted with Gore's testimony and function report. (*See* Doc. No. 21 at 10–11.) But it is the responsibility of the ALJ, not the claimant, to weigh the evidence in the record in determining what weight to give a treating source opinion. *See Bradley v. Sec'y of Health & Hum. Servs.*, 862 F.2d 1224, 1227–28 (6th Cir. 1988) ("Although the record is replete with inconsistent medical reports and [claimant's] own conflicting testimony, we acknowledge the discretion vested in the ALJ to weigh all the evidence."). And it is for the ALJ to resolve conflicts in evidence, not this Court. *See Gaffney v. Bowen,* 825 F.2d 98, 100 (6th Cir. 1987).

Moreover, a review of the ALJ's entire decision shows that he considered the totality of the record before him including Gore's daily activities, medical records, and physicians' statements. And the ALJ did not completely disregard Dr. Antalis' opinions but gave them some weight when they were not inconsistent with all of the evidence in the record, as reflected in the ALJ's finding of Gore's residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non exertional limitations: The claimant can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs. The claimant is blind in the left eye, so the claimant's peripheral vision and depth perception are limited with otherwise normal vision in the right eye. The claimant can work with both large and small objects and can avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar, approaching vehicles and people. The claimant must avoid concentrated exposure to very bright lights (brighter than

a typical office setting) and his workstation should be inside to avoid sun glare. The claimant should avoid all exposure to hazards such as unprotected heights and moving mechanical parts. The claimant should avoid the operation of motor vehicles.

(Doc. No. 16 at 23–24.)

The Court finds that the ALJ had good reasons supported by substantial evidence for giving Dr. Antalis' opinions less than controlling weight. Accordingly, Gore's objection to the R&R as pertains to ALJ's treatment of the opinions of his treating physician is overruled.

### III. CONCLUSION

For all of the foregoing reasons, plaintiff's objection to the R&R is overruled and the R&R is accepted. The Commissioner's decision denying plaintiff's applications for POD and DIB is affirmed. This case is closed.

**IT IS SO ORDERED**.

Dated: August 19, 2021

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**